(102 So. 84)

No. 26190.

## CAVANAH v. EBERT et al.

(Nov. 3, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Principal and agent** ⊜⇒69(8)—**President of owner's former agent held not precluded from acquiring title at tax sale.**

Where agreement by corporate vendor to collect rents and apply them to payment of taxes ceased when deed was executed, transferring lots to purchaser, and property was sold at tax sale two years after termination of the agency, vendor's president could purchase it either directly or through another.

2. **Taxation** ⊜⇒761—**Failure to correct form of deed to show location of court building at time of sale held not to annul tax sale.**

That in making tax deed old form was used without correcting it to show location of building in which civil district court held sessions, and at door of which sale was made, afforded no reason to annul sale.

3. **Taxation** ⊜⇒660—**That sale of property for taxes was not advertised in official journal held immaterial.**

Under Act No. 49 of 1877, § 15, Act No. 104 of 1878, and Act No. 33 of 1916, as to judicial sales in Parish of Orleans, and Act No. 315 of 1910, § 1, as to sales for taxes, tax sale need not be advertised in official journal, and is not void because it does not appear in what paper it was advertised; proof of sale being under Rev. St. 1870, § 3391, prima facie evidence that legal advertisements were regularly made.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Action by John W. Cavanah against Joseph F. Ebert, individually, and another, in which S. Timothy Warren intervened. Judgment for plaintiff, and intervener appeals. Affirmed.

Joseph Harris Brewer, of New Orleans, for appellant Samuel T. Warren.

Benjamin Ory, of New Orleans, for appellee John W. Cavanah.

OVERTON, J. On February 10, 1913, the New Orleans Home-Site Company Ltd., agreed to sell, partly for cash and partly on credit, to S. Timothy Warren, lots 22 to 25, inclusive, of block 456 in the Third district of New Orleans, and on the 15th of the same month the same company entered into a contract to sell to Warren, partly for cash and partly on credit, lots 9 to 16, inclusive, of block 678, bounded by Claiborne avenue, North Robertson, Egania, and Lazard streets. In each contract the New Orleans Home-Site Company, Ltd., agreed to convey title to the property therein described upon the payment of a specified part of the purchase price.

At the foot of the contract of date February 10, 1913, there appears the following notation:

"It is understood and agreed that the concrete sidewalk in front of this property is to be laid at no expense to the purchaser. All money received from rentals shall be prorated for taxes."

And at the foot of the contract bearing date February 15, 1913, there appears another notation, reading as follows:

"The paving of Egania street sidewalk to be paved at no expense to purchaser, and rents to be applied to taxes."

On April 3, 1917, something over four years after the contracts to sell had been entered into, the New Orleans Home-Site Company, Ltd., joined by Isabelle D. Miller as one of the vendors, transferred the foregoing lots to Warren with full warranty of title.

In 1918, the year following this transfer, the lots were assessed to Warren for the taxes of 1918. When the taxes matured Warren failed to pay them, and, as his address was unknown to the tax collector, the latter notified him by publication in the New Orleans States of his intention to advertise and sell sufficient of the property to pay the delinquent taxes due thereon, together with the penalties and costs, unless the same should be paid. Warren failed to pay after this no-

tice was given, and the sheriff therefore advertised the property for sale.

When the property was being advertised for sale John W. Cavanah, the plaintiff herein, approached Joseph F. Ebert, who was then president of the Third District Land Company, Ltd., and requested him to buy the property assessed to Warren for him, as well as various other pieces of property that were then being advertised for sale for the taxes due thereon. Ebert complied with Cavanah's request to the extent of bidding the property in, though he did so in the name of the Third District Land Company, the company of which he was president.

Some time after the sale Cavanah made demand on Ebert, and on the company of which Ebert was president, to deed the property to him, but both refused on the ground that there were certain sums due them for taxes paid and services rendered, and that so long as these sums remained unpaid they did not feel called upon to transfer the property.

Due to the refusal of Ebert and of the Third District Land Company, Ltd., to make the transfer, Cavanah instituted this suit against them to recover the property. Sometime after the institution of the suit Warren, a resident of the Republic of Honduras, intervened for the purpose of obtaining a decree declaring the property to be his.

After due trial, judgment was rendered by the court below, rejecting the intervention of Warren, and recognizing Cavanah as the owner of the lots in controversy, but ordering him to pay Ebert the sums claimed by the latter for services rendered in purchasing the property and for taxes paid by him. Ebert and the Third District Land Company were apparently satisfied with the judgment rendered, and for that reason, we take it, have not appealed. The intervener, Warren, has alone appealed.

## Opinion.

[1] The chief ground for the intervention, filed by Warren, is that Cavanah, as president of the New Orleans Home-Site Company, Ltd., was his agent, charged with the duty of administering the property in controversy, and of seeing that the taxes due thereon were paid, and hence that the purchase of the property by Cavanah through another was in violation of the agency, and in fraud of his rights.

It is clear that, if Warren has established this ground of his intervention, the sale made by the tax collector would be null, for, if Cavanah, either personally, or as president of the New Orleans Home-Site Company, Ltd., was Warren's agent, charged with the duty of administering the property and of seeing that the taxes due thereon were paid, he was clearly without right to permit his principal's property to go to tax sale, and either directly or through a person interposed purchase it at such sale. The evidence, however, does not establish that Cavanah individually, or as president of the New Orleans Home-Site Company, Ltd., was Warren's agent, for any purpose, at the time of the tax sale. True, when Warren agreed to purchase the property from the New Orleans Home-Site Company, of which Cavanah was president, that Company agreed to collect the rents, and to apply them to the payment of the taxes, but the record establishes that the agreement to collect the rents, and to thus apply them, ceased when in 1917, some four years after Warren had entered into the contract to purchase, the deed was executed under that contract, transferring the lots in controversy to him. Hence, when the property was offered at tax sale some two years after the termination of the agency, there was no reason why Cavanah could not purchase the property at tax sale, either directly or through another. We therefore conclude

that Warren's main ground of attack cannot be sustained.

[2] Warren also contends that the tax sale is null for the following reasons: The tax collector's deed recites that the property was advertised to be sold at the "principal front door of the courthouse, in which the civil district court is held, being in St. Anthony's alley, in the second district of this city," when, as a matter of fact, in 1919, when the sale took place, the civil district court held its sessions in the New Court Building on Royal street between Conti and St. Louis streets.

The civil district court was once held in a building located on St. Anthony's alley, and it is manifest that in making the deed an old form was used, without correcting it so as to show the location of the building in which the civil district court held its sessions at the time of the sale. The failure to correct the form used affords no reason to annul the sale.

[3] Warren also contends that the tax sale is null for the reason that it does not appear that it was advertised in the official journal, and for the further reason that it does not appear in what newspaper the sale was advertised.

The tax collector's deed recites that the property was advertised for sale according to law, in the manner provided for judicial sales, in the English language, in a newspaper published daily in the city of New Orleans, but leaves the name of the paper blank. It does not appear outside of the deed in what paper the advertisement was made.

The law provides that property to be sold for taxes shall be advertised for sale in the manner provided for judicial sales. Section 1 of Act 315 of 1910. The law does not prescribe that judicial sales in the parish of Orleans shall be advertised in the official journal, but provides that they shall be advertised in a daily newspaper published in the English language. Section 15 of Act 49 of 1877, p. 62; Act 104 of 1878, p. 157; and Act 33 of 1916, p. 64. Hence it is immaterial whether or not the property was advertised for sale in the official journal as it was unnecessary to advertise it therein. Nor is it fatal to the sale that it does not appear in what paper the advertisement was made. The sale was a public one. It was made by the tax collector, who was authorized by statute to make it. The law is that "when any question shall arise out of any public sale, made by any person authorized to sell at public auction, and which sale was required by law to be preceded by advertisements, the sale being proved, it shall be prima facie evidence that the legal advertisements were regularly made. * * *" Revised Statutes of 1870, § 3391.

In the absence of any evidence to the contrary the presumption therefore is that the property was regularly advertised.

Finding no error in the judgment appealed from, it is affirmed.

Judgment affirmed.